No. 25-_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
―――――――――――――――

DATA COLLECTIVE II, L.P., et al.,

*Petitioners,*

v.

BIAO WANG,

*Respondent.*

―――――――――――――――

On Petition for Permission to Appeal from the
United States District Court for the Northern District of California
Case No. 5:21-cv-6028 | Hon. P. Casey Pitts

## PETITION FOR PERMISSION TO APPEAL UNDER RULE 23(F)

Bradley J. Hamburger
Daniel R. Adler
Patrick J. Fuster
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

Michael D. Celio
Michael J. Kahn
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
(650) 849-5300
mcelio@gibsondunn.com

*Attorneys for Petitioners Data Collective II, L.P.; DCVC Opportunity
Fund, L.P.; and DCVC Management Co., LLC*

*Additional counsel on inside cover*

Jonathan A. Shapiro
GOODWIN PROCTER LLP
525 Market Street
San Francisco, CA 94105
(415) 733-6000

Daniel Roeser
Valerie A. Haggans
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue, NY 10018
(212) 813-8800

Sylvia R. Ewald
GOODWIN PROCTER LLP
520 Broadway, Suite 500
Santa Monica, CA 90401
(424) 252-6400

*Attorneys for Petitioners True Ventures IV, L.P.; True Ventures Select I, L.P.; True Ventures Select II, L.P.; True Ventures Select III, L.P.; True Ventures Select IV, L.P.; and True Venture Management, L.L.C.*

Linda J. Brewer
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

Harry A. Olivar, Jr.
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

*Attorneys for Petitioners SVF Endurance (Cayman) Ltd.; SVF Excalibur (Cayman) Ltd.; SoftBank Vision Fund (AIV M1) L.P.; and SB Investment Advisers (US) Inc.*

i

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT ............................................... 6

QUESTIONS PRESENTED .......................................................... 7

BACKGROUND............................................................................. 8

    A.    The district court dismisses securities-fraud claims asserted against venture-capital funds.................................. 8

    B.    With the venture-capital funds out of the case, the district court grants an unopposed motion for class certification................................................................. 9

    C.    After the class was certified, Wang brings the venture-capital funds back into the case via an amended complaint and names other defendants for the first time. ...................................................................... 10

    D.    The district court decides the class-certification order applies to the venture-capital defendants, even though they had never been afforded the opportunity to oppose the motion for class certification. ........................................ 11

RELIEF SOUGHT....................................................................... 13

STANDARD OF REVIEW........................................................... 13

REASONS FOR GRANTING REVIEW ................................... 13

I.    The district court manifestly erred in automatically expanding an earlier certification order to new claims against new defendants. ............................................... 13

ii

II.    The district court also manifestly erred in depriving the venture-capital defendants of the opportunity, required by due process, to brief class certification before any class was certified against them. ....................................................................... 19

III.   The venture-capital defendants have serious arguments that no class should be certified against them. .....................................25

CONCLUSION ............................................................................. 28

CERTIFICATE OF COMPLIANCE ........................................... 30

CERTIFICATE OF SERVICE.................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ................................................................ 15

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................ 5, 21, 22, 23

*Bates v. Bankers Life & Cas. Co.*,
848 F.3d 1236 (9th Cir. 2017) .................................................. 6

*In re Bemis Co.*,
279 F.3d 419 (7th Cir. 2002) .................................................... 6

*Black Lives Matter Los Angeles v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024) ......................................... 4, 15

*In re Century Aluminum Co. Secs. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ................................................ 26

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ................................... 13, 14, 24

*In re Cmty. Bank of N. Va.*,
622 F.3d 275 (3d Cir. 2010) ..................................................... 7

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .................................................................. 15

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ................................................. 15

*Erica P. John Fund, Inc. v. Halliburton*,
563 U.S. 804 (2011) ................................................................ 19

*Gibson v. Chrysler Corp.*,
261 F.3d 927 (9th Cir. 2001) ................................................. 18

iv

*Glover v. Standard Fed. Bank*,
283 F.3d 953 (8th Cir. 2002)................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .......................................................................... 17

*In re IPO Secs. Litig.*,
471 F.3d 24 (2d Cir. 2006) ................................................................ 28

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005)........................................................26, 27

*Livingston v. Assocs. Fin., Inc.*,
339 F.3d 553 (7th Cir. 2003)........................................................20, 22

*Marlo v. United Parcel Serv., Inc.*,
639 F.3d 942 (9th Cir. 2011).............................................................. 22

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017) .......................................................................6, 23

*Moser v. Benefytt, Inc.*,
8 F.4th 872 (9th Cir. 2021) ................................................................ 18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)........................................................................... 19

*Pirani v. Slack Techs., Inc.*,
127 F.4th 1183 (9th Cir. 2025) .......................................................... 25

*Matter of Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995).............................................................. 20

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
825 F.3d 299 (6th Cir. 2016).............................................................. 20

*Slack Techs., LLC v. Pirani*,
598 U.S. 759 (2023).......................................................................8, 25

*Thompson v. Comm'r of Internal Revenue*,
742 F. App'x 316 (9th Cir. 2018) .........................................................7

v

*Villella v. Chem. & Mining Co. of Chile Inc.*,
  2018 WL 2958361 (S.D.N.Y. June 13, 2018)......................................27

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).......................................3, 14, 15, 17, 19

*Walker v. World Tire Corp.*,
  563 F.2d 918 (8th Cir. 1977)....................................20, 22, 24

*Wolff v. Aetna Life Ins. Co.*,
  77 F.4th 164 (3d Cir. 2023)................................................23

## Constitutional Provisions

U.S. Const. Amend. XIV, § 1, cl. 3 ...............................1, 4, 7, 19

## Statutes

15 U.S.C. § 77k(a) .........................................................27

15 U.S.C. § 77o(a) .........................................................27

28 U.S.C. § 1292(e) ..........................................................6

## Rules

Fed. R. Civ. P. 15 ..........................................10, 16, 17, 18

Fed. R. Civ. P. 23(a)(2) ...................................................14

Fed. R. Civ. P. 23(a)(3) ...............................................14, 19

Fed. R. Civ. P. 23(b)(3) ...................................................15

Fed. R. Civ. P. 23(c)(1)(B)..............................3, 15, 17, 18

Fed. R. Civ. P. 23(f) ........................................................6

## Regulations

17 C.F.R. § 230.144(d)(1)(ii) ..............................................26

vi

## Other Authorities

S. Rep. No. 109-14 (2005) ......................................................................... 20

## INTRODUCTION

Parties seeking Rule 23(f) review of class-certification orders often say that the district court didn't perform a "rigorous analysis" of Rule 23's requirements. But here there was literally no analysis at all. First, the district court granted the plaintiff's class-certification motion in a one-paragraph order because the defendants that were then in the case didn't oppose it. Next, the court let the plaintiff add more defendants, the petitioners here, through an amended complaint. And then the court decided, on a Zoom status conference, that its earlier class-certification order somehow applied to those new defendants—without giving them an opportunity to brief the issues and without assessing any of Rule 23's requirements. In effect, the court held that the time to oppose certification was when petitioners were not even parties yet.

The district court's too-late-from-the-start approach is fundamentally inconsistent with both Rule 23, which requires plaintiffs to prove the requirements for class certification are satisfied, and the Due Process Clause, which mandates notice and an opportunity to be heard. This Court should vacate and remand with instructions that, if the plaintiff wants to pursue claims against the new defendants on behalf of a class,

1

he must file a motion for class certification with respect to those new claims, and the new defendants must have the opportunity to oppose that motion.

This case stems from a drop in Zymergen's stock a few months after it went public. Almost immediately after the stock drop, a securities lawsuit was filed against Zymergen, its officers and directors, and the underwriters of its IPO. Once a lead plaintiff had been selected, he filed an amended complaint naming as additional defendants certain venture-capital funds that had invested in Zymergen. These funds moved to dismiss, and the district court granted their motion. While they were out of the case, the plaintiff moved for class certification. The remaining defendants didn't oppose the motion, which the district court granted in a one-paragraph order. The plaintiff later filed another amended complaint, again naming the previously dismissed venture-capital funds and naming other venture-capital entities for the first time. All these venture-capital defendants moved to dismiss, but the district court denied the motion.

The venture-capital defendants (petitioners here) were surprised enough to be back in the case (or, for three of them, to be in it for the first

time). But a bigger surprise was in store: After they moved to set a briefing schedule on class certification, because no class had been certified as to claims against them, the district court denied that motion too. At a status conference held just a few days after the venture-capital defendants filed their motion, and before the plaintiff had responded, the court ruled that because it had earlier certified "the action" as a whole, the certification order automatically expanded to cover the new claims against the venture-capital defendants that were not even parties when the order was issued. According to the court, the venture-capital defendants' only recourse was to move to decertify the class.

The district court's expansion of the class-certification order to the venture-capital defendants and the refusal to permit them any opportunity to brief class-certification issues before a class was certified against them is manifestly erroneous and warrants Rule 23(f) review for two reasons.

First, the decision is irreconcilable with Rule 23, which "does not set forth a mere pleading standard" and instead requires plaintiffs to *prove* that Rule 23's requirements have been satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), as to particular "claims," Fed. R.

3

Civ. P. 23(c)(1)(B).  But pleading is all that happened here; it was the mere fact that new claims against the venture-capital defendants were added to an amended complaint that supposedly resulted in a class being certified against them.  The district court never analyzed whether those claims against the venture-capital defendants were fit for class treatment under Rule 23.  This Court has held, on Rule 23(f) review, that district courts may not take shortcuts, like relying on the orders of other district courts, in deciding class certification.  *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1263 (9th Cir. 2024).  Here, worse than taking a shortcut, the district court did no analysis at all of Rule 23's prerequisites to class certification.  Instead, it bootstrapped an uncontested class-certification motion into a certified class against defendants that never had an opportunity to oppose certification.

Second, the district court's decision is also manifestly erroneous because it violates the Due Process Clause, which mandates notice and an opportunity to be heard before a class is certified against a defendant. The court decided the uncontested class-certification order extended to the venture-capital defendants, even though they had been given no opportunity to explain why no class should be certified against them.

4

Courts have held that similar orders violate due process. The Sixth Circuit, for example, decided that it was a violation of due process to expand a class-certification order to cover a claim against a defendant just three days after it was added to the case, especially when it had no opportunity to brief or argue the issue. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996). Here, too, the district court didn't respect the venture-capital defendants' due-process right to be heard on class-certification issues *before* any class was certified against them.

The venture-capital defendants aren't interested solely in vindicating their procedural and constitutional rights, though that would be reason enough to grant review. They also have strong arguments that no class action should be certified against them. For example, the plaintiff must prove that each and every Zymergen investor bought registered shares. But millions of *un*registered shares were in circulation around the time of Zymergen's IPO, and there is no classwide method of proving that every investor bought only registered shares.

If the order here isn't manifestly erroneous, no certification order is. This Court should vacate the certification order and instruct the

district court to order full briefing on the propriety of class certification as to the claims asserted against the venture-capital defendants.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). On March 6, 2025, the district court denied the venture-capital defendants' motion to set a briefing schedule on class certification. Dkt. 536. The court ruled for the first time that the venture-capital defendants were automatically bound by its August 2023 order granting an unopposed motion to certify a class, even though the motion was filed and granted when those defendants were not parties.

That ruling is "functionally equivalent to an order [granting] a motion for class certification and therefore appealable under Rule 23(f)." *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017) (cleaned up). Courts of appeals regularly review, under Rule 23(f), orders that have the effect of granting or denying a motion for class certification, or modifying a certified class, even if the orders are described in different terms. *E.g.*, *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017) (order granting motion to strike class allegations); *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002) (order striking portion of answer asserting that

6

case could not proceed as class action); *Glover v. Standard Fed. Bank*, 283 F.3d 953, 959 (8th Cir. 2002) ("clarification" expanding the size of a certified class). The Court should do the same here. Or, in the alternative, the Court could construe this petition as one for mandamus relief. *See, e.g.*, *Thompson v. Comm'r of Internal Revenue*, 742 F. App'x 316, 318 (9th Cir. 2018); *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 314 (3d Cir. 2010).

## QUESTIONS PRESENTED

The district court granted an unopposed motion to certify a class of investors. Then the plaintiff amended his complaint to add another group of defendants. Those new defendants sought an opportunity to brief the propriety of class certification, but the district court denied it, reasoning that it had already certified "the action" as a whole. Is the district court's decision manifestly erroneous and worthy of Rule 23(f) review because it is inconsistent with (1) Rule 23, which requires courts to perform a rigorous analysis to determine whether a plaintiff has proved the Rule's requirements have been met, and (2) the Due Process Clause, which requires courts to give litigants notice and an opportunity to be heard before adverse action is taken against them?

# BACKGROUND

## A. The district court dismisses securities-fraud claims asserted against venture-capital funds.

A company must file a registration statement with the SEC to go public. *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 762 (2023). So before going public in April 2021, Zymergen, a biotechnology company, filed its registration statement. Dkt. 395 at 2. Zymergen's stock dropped a few months after its IPO. Dkt. 321 ¶ 35.

An investor almost immediately sued, claiming Zymergen's registration statement contained misleading disclosures in violation of Sections 11 and 15 of the Securities Act of 1933. Dkt. 1 ¶¶ 56-69. The complaint named as defendants Zymergen and its officers, directors, and underwriters. *Id.* ¶¶ 2, 9, 14-32, 56-69.

The court appointed a lead plaintiff, Biao Wang, who filed an amended complaint naming three groups of venture-capital funds—from DCVC, True Ventures, and SoftBank—as additional defendants. Dkt. 78 ¶¶ 62-64. The funds were minority shareholders of Zymergen, and together had the power to appoint three of its nine board members. *Id.* ¶ 66. Yet Wang claimed the funds controlled Zymergen and were liable under Section 15. *Id.* ¶¶ 65-69.

8

In November 2022, the district court (Judge Chhabria) dismissed the claims against the venture-capital funds without prejudice. Dkt. 162 at 4. The court cited insufficient "allegations to suggest that [those defendants] acted in concert" to "control" Zymergen. *Id.* The court dismissed the claims against the venture-capital funds with leave to amend within 28 days. *Id.* Wang didn't amend by that date.

### B. With the venture-capital funds out of the case, the district court grants an unopposed motion for class certification.

In April 2023, Wang moved to certify a class "of all persons and entities that purchased or otherwise acquired Zymergen common stock pursuant and/or traceable to the Registration Statement." Dkt. 180 at 8. He argued the putative class was "ideally suited for class certification" because it "assert[ed] the same claims, against the same Defendants." *Id.* at 2. Wang did not mention the venture-capital defendants that had been dismissed. *Id.* The defendants still in the case—Zymergen and its officers, directors, and underwriters—filed a "notice of non-opposition" to Wang's class-certification motion. Dkt. 188 at 1. The district court granted the unopposed motion in a one-paragraph order that did not mention the dismissed venture-capital defendants. Dkt. 194.

9

After the case was reassigned to Judge Pitts, the district court approved Wang's proposed notice to the class. Dkt. 209. The notice informed class members that "a class action" was "now pending" in the district court "against Zymergen Inc., [its officers and directors], and [its underwriters]." Dkt. 209-1 at 1. The notice, like Wang's motion and the court's class-certification order, did not mention the dismissed venture-capital funds. *See id.* at 1-6.

**C.    After the class was certified, Wang brings the venture-capital funds back into the case via an amended complaint and names other defendants for the first time.**

After an administrator mailed and published notice of the class action against Zymergen, its officers and directors, and its underwriters, Dkt. 229 ¶¶ 6-13, Wang moved for leave to file a second amended complaint, Dkt. 234 at 3. That complaint reasserted Section 15 control-person claims against the dismissed venture-capital funds and brought claims against certain other affiliated venture-capital defendants for the first time. Dkt. 321 ¶¶ 1-5, 255-60. The district court granted leave under the "liberal standard" of Federal Rule of Civil Procedure 15 on the theory that Wang had not acted with undue delay or bad faith. Dkt. 313 at 2-4.

10

The venture-capital defendants moved to dismiss Wang's claims, including on timeliness grounds, but the district court denied the motion. Dkt. 395.

**D.  The district court decides the class-certification order applies to the venture-capital defendants, even though they had never been afforded the opportunity to oppose the motion for class certification.**

Wang didn't move to certify a class action against the venture-capital defendants (either those he re-added to the case or those he sued for the first time).  Instead, he took the position that "nothing about the addition of the VC Defendants changes" the certification order that was issued when the only named defendants were Zymergen, its officers and directors, and its underwriters.  Dkt. 400 at 9.

Because they were not parties at the time of the class-certification order, the venture-capital defendants moved to set a briefing schedule so they could oppose a motion to certify a class against them.  Dkt. 528. They argued the need for briefing was "heightened by the fact that the class was certified without opposition from the defendants in the case at the time."  *Id*. at 2.  And they explained they had serious arguments against class certification, including that Wang would have no method of proving his securities claims against the venture-capital defendants on a

11

classwide basis. *Id.* at 6-7 & n.4. Specifically, there is no classwide method of proving that investors bought registered shares, or that investors were unaware when they bought Zymergen shares of the facts supposedly omitted from the statement. *Id.*

Six days after the venture-capital defendants moved to set a briefing schedule, the parties appeared via Zoom before the district court for a status conference. Although Wang had not yet filed a response to the motion, the court asked the venture-capital defendants to justify their request for a briefing schedule on class certification. Dkt. 538 at 7:14-24. After a brief colloquy, the court ruled for the first time that the "class certification in place now" extended to those defendants. *Id.* at 11:11-12. The court also ruled that the new defendants could move to decertify the class if they wished to present their arguments against class certification. *Id.* at 11:14-18. Later that day, the court memorialized its order denying the venture-capital defendants' motion to set a briefing schedule in a minute entry. Dkt. 536.

12

## RELIEF SOUGHT

The Court should grant Rule 23(f) review, vacate the order certifying a class against petitioners, and remand for briefing on the propriety of class certification as to the venture-capital defendants.

## STANDARD OF REVIEW

Rule 23(f) review is warranted where a class-certification decision "is manifestly erroneous" or "presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005) (per curiam).

## REASONS FOR GRANTING REVIEW

### I. The district court manifestly erred in automatically expanding an earlier certification order to new claims against new defendants.

Without addressing any of Rule 23's requirements, the district court declared that the venture-capital defendants are now litigating against a certified class, even though they weren't defendants in the case when the class was certified. That uncritical expansion of the class action to cover the newly pressed claims against the venture-capital defendants conflicts with bedrock requirements for class certification and is a textbook example of a ruling that is "manifestly erroneous and virtually

13

certain to be reversed on appeal from the final judgment." *Chamberlan*, 402 F.3d at 962. This Court should grant review and hold that a plaintiff cannot secure class certification as to claims against one set of defendants (especially when, as here, those defendants didn't even oppose the certification motion) and then expand the certification order to claims against a second set of defendants without affirmatively demonstrating that class treatment is proper for those new claims under Rule 23.

Class actions are "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To justify such an exception, a plaintiff must go beyond "mere pleading" and "affirmatively demonstrate" compliance with each of Rule 23's requirements. *Id.* at 350. Wang, for example, would have to prove that his control-person claims against the venture-capital defendants "are typical of the claims . . . of the class" and that resolving all the investors' claims would turn on common questions that can be answered in one fell swoop. Fed. R. Civ. P. 23(a)(2)-(3); *see Dukes*, 564 U.S. at 350. Wang would also have to carry his "demanding" burden of proving that questions common to the class "predominate" over any individualized defenses the venture-capital

14

defendants might press. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *see* Fed. R. Civ. P. 23(b)(3). These are "stringent requirements for certification," they must be applied on a claim-by-claim basis, and they "in practice exclude most claims," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013); Fed. R. Civ. P. 23(c)(1)(B).

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that the named plaintiff has satisfied Rule 23's requirements. *Dukes*, 564 U.S. at 350-51. When a district court doesn't satisfy that standard—and especially when it says nothing at all about Rule 23's requirements—the certification order cannot stand. In *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249 (9th Cir. 2024), for example, this Court vacated a class-certification order on Rule 23(f) review because the district court made "passing citations to other district court orders" rather than doing its own rigorous analysis. *Id.* at 1263; *see also, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (vacating order on Rule 23(f) review because district court hadn't "resolve[d] the critical factual disputes" bearing on commonality).

15

The initial order here said nothing about claims against the venture-capital defendants—no surprise, given that they were not even parties at the time. Wang sought to certify a class asserting claims against only the then-named defendants: Zymergen, some of its officers and directors, and the IPO underwriters. Dkt. 180 at 2 & n.3. In his motion, he said nothing about the venture-capital defendants beyond noting that the district court had dismissed them. *Id.* at 3-5 & n.4. And the defendants who were actually parties did not oppose class certification. Dkt. 188 at 1. Accepting that non-opposition, the district court certified the class in a one-paragraph order that didn't mention the venture-capital defendants, Dkt. 194, and approved a notice to class members that informed them of a certified class asserting only claims against Zymergen, the officers and directors, and the underwriters, Dkt. 209-1 at 1. The notice, like the order, didn't mention the venture-capital defendants. To the contrary, they may have been *recipients* of the notice as members of the investor class, as Wang acknowledged. Dkt. 400 at 9-10.

Nor did the class action spontaneously expand when the district court granted leave under Rule 15 for Wang to file a second amended complaint that re-named the venture-capital funds and three of their

16

affiliates as defendants for the first time. Rule 15, which permits the liberal amendment of pleadings, has nothing to do with Rule 23, which requires courts to conduct a "rigorous analysis" before certifying a class. *Dukes*, 564 U.S. at 351. Automatically extending a class action when the named plaintiff asserts new claims against new parties in an amended pleading would defy the rule that, "before class certification," "plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275-76 (2014), including as to particular "claims," Fed. R. Civ. P. 23(c)(1)(B). There is no exception for defendants and claims that come along later, *after* a class has already been certified.

Pleading is literally all that happened here: Wang pleaded new claims against new defendants in an amended complaint. But he never filed a motion seeking class certification as to those new claims. The district court nowhere decided, in allowing leave to amend, to expand the scope of the certified class to cover those claims. The expansion of the class couldn't have happened automatically. As this Court has held, a class complaint, "when filed, includes only the claims of the named

17

plaintiff," leaving "[t]he claims of unnamed class members [to be] added to the action later, when the action is certified as a class under Rule 23." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001); *accord Moser v. Benefytt, Inc.*, 8 F.4th 872, 877-78 (9th Cir. 2021). Rule 23, not Rule 15, answers whether Wang could assert the new claims against the venture-capital defendants on behalf of a class.

The district court has never rigorously analyzed whether class treatment was proper for the claims against the venture-capital funds—not when Wang filed his unopposed motion to certify a class against *other* defendants, nor when he amended his complaint adding the venture-capital defendants. But once those defendants had been added into the case and asked to be heard on the propriety of class certification as to the distinct claims against them, the district court decided the certified class already covered them. The sole basis for that ruling, delivered during a status conference, was the Court's observation that "the language of Rule 23 says you certify the action that's a class action," not that a court certifies "a claim." Dkt. 538 at 8:13-17.

In fact, Rule 23 says the exact opposite: A certification order "*must* define the class *and* the class *claims*, issues, or defenses." Fed. R. Civ. P.

23(c)(1)(B) (emphasis added).  That requirement reflects the reality that Rule 23 turns on a claim-by-claim analysis.  The plaintiff must prove a common question's resolution "will resolve an issue that is central to the validity of *each one of the claims* in one stroke." *Dukes*, 564 U.S. at 350 (emphasis added).  The plaintiff must prove that his "claims" are "typical of the claims" of the putative class.  Fed. R. Civ. P. 23(a)(3).  And the predominance requirement "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 809 (2011).  Nothing in Rule 23 supports the ruling that, once the named plaintiff secures class certification on some claims against some defendants, he has obtained it for any claims against any defendants who might be named later.

## II. The district court also manifestly erred in depriving the venture-capital defendants of the opportunity, required by due process, to brief class certification before any class was certified against them.

The Due Process Clause demands that a defendant be given "notice and opportunity for hearing" before its rights are adjudicated by a court. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950).  Here, the district court denied the venture-capital defendants due process by expanding the earlier class-certification order to cover the claims against

19

them without having permitted them to brief why no class should be certified against them.

Courts must respect defendants' basic "due process rights" at every stage of a case, including class certification. *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003). Class certification is a critical inflection point in any class action. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 306 (6th Cir. 2016). A class-certification order reveals the "magnitude of risk" for a defendant, which in turn informs the defendant's choice to defend against claims or buckle to "intense pressure to settle." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995). For that reason, in enacting the Class Action Fairness Act, Congress explained that "the strict requirements of Rule 23 . . . are intended to protect the due process rights of both unnamed class members *and defendants*." S. Rep. No. 109-14, at 14 (2005) (emphasis added).

Respecting these due-process rights requires that defendants be given "an adequate opportunity to respond substantively to the [plaintiff's] class certification motion" *before* "the court's decision to certify a class." *Livingston*, 339 F.3d at 558; *accord, e.g.*, *Walker v. World Tire*

20

*Corp.*, 563 F.2d 918, 921 (8th Cir. 1977) (courts may not "rule on the class action question without affording the parties notice and an opportunity to make a record on the issue").  So if defendants are given "no opportunity . . . to submit a brief to the district court or seek a hearing addressing the class actions issues" *before* certification, their "due process rights [are] violated."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

That's what happened in *American Medical Systems*.  There, as here, after a class had been certified for claims against the initial defendants, the plaintiff filed an amended complaint asserting claims against "an additional defendant."  75 F.3d at 1076.  Before the new defendant had an opportunity to submit any "briefing, or argument," the district court ruled that class claims could be maintained against the new defendant.  *Id.* at 1076-78.  The defendant sought a writ of mandamus—the only remedy available before the adoption of Rule 23(f) in 1998—and the Sixth Circuit granted the writ and vacated the class-certification order. *Id.* at 1090.  The court reasoned that "the district judge's precipitous certification of the class" violated the newly added defendant's "due process

21

rights" because "[i]t had no opportunity . . . to submit a brief to the district court or seek a hearing addressing the class actions issues." *Id.* at 1086.

Here, too, the district court violated the venture-capital defendants' due-process rights by ruling they are subject to a class-certification order that was entered when they were out of the case. The court gave those defendants no opportunity to contest class certification before "the court's decision to certify a class." *Livingston*, 339 F.3d at 559. Instead, it "rule[d] on the class action question without affording th[ose] parties notice and an opportunity to make a record on the issue." *Walker*, 563 F.2d at 921. That falls far short of what due process requires.

None of this mattered to the district court. In its view, denying the venture-capital defendants the opportunity to litigate class certification in the manner required by Rule 23—starting with a motion filed by a plaintiff with the heavy burden to prove each prerequisite—would cause no prejudice because they could "make [their] case through a motion for decertification." Dkt. 538 at 9:24-25. But that's backwards: "The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (cleaned up). By forcing the

22

venture-capital defendants to affirmatively move to undo certification of a class they never had a chance to oppose, the district court in effect "place[d] the burden on the [venture-capital] defendants to disprove [Wang's] 'entitlement' to class certification." *Am. Med. Sys.*, 75 F.3d at 1086. Due process would never allow a district court to dismiss a complaint without the opportunity to be heard, but with a promise to entertain a reconsideration motion, or to enter judgment at trial before the defendant puts on his case, but with a promise to consider a Rule 59 motion. This case should be no different.

A decertification motion is no substitute for notice and an opportunity to be heard *before* the district court certifies the class against a defendant. Putting the onus on a defendant to decertify a class that it never had an opportunity to contest before certification ignores the reality that, "while not *technically* a final order, the class-action certification decision is often decisive as a practical matter." *Wolff v. Aetna Life Ins. Co.*, 77 F.4th 164, 167 (3d Cir. 2023) (cleaned up). The Supreme Court, this Court, and Rule 23's drafters alike have recognized that a class-certification order "may force a defendant to settle rather than run the risk of potentially ruinous liability." *Microsoft Corp. v. Baker*, 582 U.S.

23, 41-42 (2017) (cleaned up); *accord Chamberlan*, 402 F.3d at 957. Requiring defendants to face this kind of settlement pressure before they've even had a chance to brief class certification is inherently unfair and inconsistent with due process.

Limiting a defendant who never had an opportunity to oppose certification to a motion to decertify, rather than requiring the plaintiff to move to certify claims against that defendant, also can potentially cut off a defendant's right to seek appellate review under Rule 23(f). That rule does not authorize petitions challenging an order denying decertification if it "leaves the status quo of a prior certification order unchanged." *Walker*, 953 F.3d at 636. So by forcing the venture-capital defendants to litigate class certification exclusively through a motion for decertification, the district court is likely foreclosing them from seeking Rule 23(f) review of an order denying decertification.

Petitioners are unaware of any ruling, other than the ruling below, holding that a defendant may only move to decertify a class in the circumstances here. There are no such decisions either because the ruling below is obviously wrong or because this case presents an issue on which courts in this Circuit need guidance. Either way, this Court should grant

24

review and hold that saddling a newly added defendant with a class-certification order that it had no ability to influence violates due process, and the opportunity to move for decertification is no substitute for what due process requires: notice and an opportunity to be heard on class-certification issues *before* a class is certified.

## III. The venture-capital defendants have serious arguments that no class should be certified against them.

If the venture-capital defendants had been given an opportunity to contest class certification, they might have persuaded the district court not to certify the class. Consider just two arguments.

First, Wang has no way to prove on a classwide basis the central element of his Section 11 claim and derivative Section 15 claim against the venture-capital defendants. The Supreme Court held in *Slack* that Section 11 plaintiffs must prove they bought shares "traceable to the particular registration statement alleged to be false or misleading." 598 U.S. at 768. On remand in that case, this Court held that because the market contained both registered and unregistered shares, and because the plaintiff couldn't prove he bought only registered shares, his complaint must be dismissed with prejudice. *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1191 (9th Cir. 2025). That decision follows others foreclosing

25

Section 11 liability because the plaintiffs could not prove they bought only registered shares. *E.g.*, *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108-09 (9th Cir. 2013); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495-97 (5th Cir. 2005).

Here, similarly, plaintiffs have no way to prove, on a classwide basis, that all Zymergen investors bought only registered shares. As in cases like *Pirani*, *Century*, and *Krim*, investors were buying from a market that contained more than just shares registered under the challenged registration statement. The 18.5 million shares in Zymergen's IPO, Dkt. 180 at 2, weren't the only shares in circulation. More than a year before the IPO, Zymergen acquired a company for almost 1.1 million Zymergen shares. Dkt. 528-2 at 11. Under SEC Rule 144, those shares became freely tradeable no more than a year after that acquisition, 17 C.F.R. § 230.144(d)(1)(ii), so by the time of the IPO, those additional shares could be bought and sold alongside the IPO shares. And just a few weeks after the IPO, Zymergen acquired another company for almost 800,000 Zymergen shares. Dkt. 528-3 at 8. As a result, *nearly two million unregistered shares* could be bought and sold around the time of the IPO. That's almost 10% of all shares in circulation—far more than the

26

0.15% of non-IPO shares that made it impossible for one of the plaintiffs in *Krim* to prove he bought only registered shares. 402 F.3d at 492. Because plaintiffs have no way of proving, on a classwide basis, that investors bought registered shares, they cannot satisfy Rule 23's predominance requirement.

Second, at least some investors already knew the information they claim was omitted from Zymergen's registration statement—and determining who those investors are would be impossible without individualized inquiries. If plaintiffs "knew of [the claimed] untruth or omission" when they bought their shares, they cannot maintain a Section 11 claim, 15 U.S.C. § 77k(a), or a derivative control-person claim under Section 15, *id.* § 77o(a). Here, for example, one of the plaintiffs, a Florida pension fund, bought its shares through an investment manager that had invested in Zymergen before the IPO. Dkt. 528 at 7 n.4. As a result of that early investment, the manager likely knew more about Zymergen than the company later revealed in its registration statement, and that knowledge can be imputed to that plaintiff. *Villella v. Chem. & Mining Co. of Chile Inc.*, 2018 WL 2958361, at *4-5 (S.D.N.Y. June 13, 2018) (collecting cases). Figuring out what each Zymergen investor knew and

27

when would be a difficult and individualized task—not something that could be resolved on a classwide basis. *See, e.g.*, *In re IPO Secs. Litig.*, 471 F.3d 24, 43-45 (2d Cir. 2006) (denying class certification for precisely this reason).

The venture-capital defendants should be allowed to assert these and other arguments in briefing and have the benefit of a reasoned district-court order addressing whether Wang can clear the high bar of proving he can satisfy all the requirements of Rule 23.

## CONCLUSION

The Court should grant review.

Dated: March 20, 2025    Respectfully submitted,

_____/s/ Michael D. Celio_____
Michael D. Celio

*Attorney for Petitioners Data Collective II, L.P.; DCVC Opportunity Fund, L.P.; and DCVC Management Co., LLC*


_____/s/ Jonathan A. Shapiro_____
Jonathan A. Shapiro

*Attorney for Petitioners True Ventures IV, L.P.; True Ventures Select I, L.P.; True Ventures Select II, L.P.; True Ventures Select III, L.P.; True Ventures Select IV, L.P.; and True Venture Management, L.L.C.*


_____/s/ Linda J. Brewer_____
Linda J. Brewer

*Attorney for Petitioners SVF Endurance (Cayman) Ltd.; SVF Excalibur (Cayman) Ltd.; SoftBank Vision Fund (AIV M1) L.P.; and SB Investment Advisers (US) Inc.*

29

## CERTIFICATE OF COMPLIANCE

This petition complies with the word limit of Circuit Rules 5-2(b) and 32-3(2) because it contains 5,583 words, excluding the portions exempted by Rules 5(b)(1)(E) and 32(f) of the Federal Rules of Appellate Procedure.

The petition complies with the typeface and type-style requirements of Rule 32(a)(5)(A) and (a)(6) because it has been prepared in 14-point, New Century Schoolbook font.

Dated: March 20, 2025        Respectfully submitted,

                        */s/ Michael D. Celio*
                        Michael D. Celio

*Attorney for Petitioners Data Collective II, L.P.; DCVC Opportunity Fund, L.P.; and DCVC Management Co., LLC*

30

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate ACMS system. I further certify that on the same day, I caused the petition to be served by email and by commercial carrier for next-day delivery on:

Shawn A. Williams
Daniel J. Pfefferbaum
Alaina L. Gilchrist
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
(415) 288-4545
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
agilchrist@rgrdlaw.com

Juan Carlos Sanchez
Patton L. Johnson
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
jsanchez@rgrdlaw.com
pjohnson@rgrdlaw.com

*Attorneys for Respondent Biao Wang*

Nicole Lavallee
Kristin J. Moody
Jeffrey V. Rocha
BERMAN TABACCO
425 California Street, Suite 2300
San Francisco, CA 94104
(415) 422-3200
nlavallee@bermantabacco.com
kmoody@bermantabacco.com
jrocha@bermantabacco.com

Leslie R. Stern
BERMAN TABACCO
One Liberty Square
Boston, MA 02109
(617) 542-8300
lstern@bermantabacco.com

Robert D. Klauser
Bonni S. Jensen
KLAUSNER, KAUFMAN, JENSEN & LEVINSON
7080 NW 4th Street
Plantation, FL 33317
(954) 916-1202
bob@robertdklausner.com
bonni@robertdklausner.com

*Attorneys for West Palm Beach Firefighters' Pension Fund*

Dated: March 20, 2025                    Respectfully submitted,


                                    /s/ *Michael D. Celio*
                                    Michael D. Celio

                                    *Attorney for Petitioners Data*
                                    *Collective II, L.P.; DCVC*
                                    *Opportunity Fund, L.P.; and DCVC*
                                    *Management Co., LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BIAO WANG,

           Plaintiff,

    v.

ZYMERGEN INC., et al.,

          Defendants.

Case No.  21-cv-06028-VC

**ORDER GRANTING MOTION TO CERTIFY CLASS**

Re: Dkt. No. 180

       The unopposed motion to certify the class, appoint the class representative, and appoint class counsel is granted. As the motion defines it, the certified class consists of persons and entities that purchased or otherwise acquired Zymergen Inc. common stock pursuant and/or traceable to the registration statement and prospectus issued in connection with Zymergen's April 2021 initial public offering. *See* Dkt. No. 180 at 6–7.

       **IT IS SO ORDERED.**

Dated: August 11, 2023

VINCE CHHABRIA
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| Wang, et al., | ) |
| | ) No. 5:21-cv-06028-PCP |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) San Francisco, California |
| Zymergen, Inc., et al., | ) March 6, 2025 |
| | ) 1:59 p.m. |
| Defendants. | ) |
| ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ | ) |

**BEFORE:  THE HONORABLE P. CASEY PITTS, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS VIA ZOOM VIDEOCONFERENCE**

**STATUS CONFERENCE**

Official Court Reporter:
Jennifer Pancratz, RMR, CRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2    (By Zoom Videoconference)

3    For Plaintiffs Wang:

4        ROBBINS GELLER RUDMAN DOWD LLP
         By:  **Shawn A. Williams, Esq.**
5             **Daniel J. Pfefferbaum, Esq.**
         One Montgomery St., Suite 1800
6        San Francisco, CA 94104

7        ROBBINS GELLER RUDMAN DOWD LLP
         By:  **Patton L. Johnson, Esq.**
8        655 W. Broadway, Suite 1900
         San Diego, CA 92101

9
     For Plaintiff West Palm Beach Firefighters' Pension Fund:
10
         BERMAN TABACCO
11       By:  **Kristin J. Moody, Esq.**
         425 California St., Suite 2300
12       San Francisco, CA 94104

13   For Defendants Zymergen Inc., Chu, Flatley, Gorjanc, Murdoch,
     Ocko, Peterson, Serber, and Sharma:
14
         WILMER CUTLER PICKERING HALE & DORR LLP
15       By:  **Kevin P. Muck, Esq.**
         50 California St., Suite 3600
16       San Francisco, CA 94111

17       WILMER CUTLER PICKERING HALE & DORR LLP
         By:  **Peter J. Kolovos, Esq.**
18       60 State St.
         Boston, MA 02109

19
     For the DCVC Defendants:
20
         GIBSON, DUNN & CRUTCHER LLP
21       By:  **Michael J. Kahn, Esq.**
         One Embarcadero Center, Suite 2600
22       San Francisco, CA 94111

23

24

25

```
 1    For the underwriter defendants:

 2        MORGAN LEWIS & BOCKIUS LLP
          By:  Michael L. Kichline, Esq.
 3        2222 Market St.
          Philadelphia, PA 19103
 4
          MORGAN LEWIS & BOCKIUS LLP
 5        By:  Kevin M. Papay, Esq.
               Charlene S. Shimada, Esq.
 6        One Market St., Spear Street Tower
          San Francisco, CA 94105
 7
      For Defendant Hoffman:
 8
          EHRLICH & CRAIG LLP
 9        By:  Alexander Setzepfandt, Esq.
          803 Hearst Ave.
10        Berkeley, CA 94710

11    For Defendant Singh:

12        MORRISON & FOERSTER LLP
          By:  Michael E. Komorowski, Esq.
13        425 Market St.
          San Francisco, CA 94105
14
      For the SoftBank defendants:
15
          QUINN EMANUEL URQUHART & SULLIVAN, LLP
16        By:  Linda J. Brewer, Esq.
          50 California St., 22nd Floor
17        San Francisco, CA 94111

18    For the True Ventures defendants:

19        GOODWIN PROCTER LLP
          By:  Valerie Haggans, Esq.
20        620 Eighth Ave.
          New York, NY 10018
21
          GOODWIN PROCTER LLP
22        By:  Jonathan A. Shapiro, Esq.
          525 Market St., Floor 32
23        San Francisco, CA 94105

24

25
```

UNITED STATES DISTRICT COURT

4

1          **P R O C E E D I N G S**

2          (Proceedings commenced at 1:59 p.m.)

3          THE COURTROOM DEPUTY:  Calling Case No. 21-cv-6028,

4    Wang versus Zymergen, on today for a status conference.

5          We are going to ask for appearances, but I'm going to

6    ask Your Honor if you could ask for the parties' appearances in

7    the order that would best serve us here.

8          THE COURT:  Yes.  We've learned with this many people

9    it works a little better if I call out names and you state your

10   appearance rather than trying to figure out who's going to say

11   what, when.  So I'll start with Mr. Williams.

12         MR. WILLIAMS:  Good afternoon, Your Honor.  Shawn

13   Williams on behalf of Mr. Wang and the class, Robbins Geller

14   Rudman and Dowd.

15         THE COURT:  Okay.  Mr. Pfefferbaum?

16         MR. PFEFFERBAUM:  Good afternoon, Your Honor.  Dan

17   Pfefferbaum, Robbins Geller, also on behalf of Mr. Wang and the

18   class from Robbins Geller.

19         THE COURT:  And Mr. Johnson?

20         MR. JOHNSON:  Good morning, Your Honor.  Patton

21   Johnson on behalf of the plaintiff Biao Wang and the class,

22   also from Robbins Geller.

23         THE COURT:  And Ms. Moody?

24         MS. MOODY:  Good afternoon, Your Honor.  Kristin Moody

25   of Berman Tabacco on behalf of named plaintiff West Palm Beach

1   Firefighters' Pension Fund.

2        THE COURT:  Mr. Kichline?

3        MR. KICHLINE:  Good afternoon, Your Honor.  Michael

4   Kichline, Morgan Lewis, here on behalf of the underwriter

5   defendants.

6        THE COURT:  Mr. Papay?

7        MR. PAPAY:  Good afternoon, Your Honor.  Kevin Papay

8   from Morgan Lewis and Bockius, also on behalf of the

9   underwriter defendants.

10        THE COURT:  Mr. Kahn?

11        MR. KAHN:  Hello, Your Honor.  Michael Kahn of Gibson

12   Dunn on behalf of the DCVC defendants.

13        THE COURT:  Mr. Setzepfandt?

14        MR. SETZEPFANDT:  Good afternoon, Your Honor.  Alex

15   Setzepfandt on behalf of Josh Hoffman.

16        THE COURT:  Mr. Kolovos?

17        MR. KOLOVOS:  Good afternoon, Your Honor.  Peter

18   Kolovos from Wilmer Cutler Pickering Hale & Dorr on behalf of

19   defendants Zymergen Inc. and the individual defendants Chu,

20   Flatley, Gorjanc, Murdoch, Ocko, Peterson, Serber, and Sharma.

21        THE COURT:  Good afternoon.

22        Mr. Komorowski?

23        MR. KOMOROWSKI:  Good afternoon, Your Honor.  Michael

24   Komorowski, Morrison and Foerster, on behalf of defendant

25   Enakshi Singh.

1          THE COURT:  Good afternoon.

2          Mr. Muck?

3          MR. MUCK:  Good afternoon, Your Honor.  Kevin Muck

4   from WilmerHale on behalf of the same clients that Mr. Kolovos

5   identified.

6          THE COURT:  Ms. Shimada?

7          MS. SHIMADA:  Good afternoon, Your Honor.  Charlene

8   Shimada from Morgan Lewis and Bockius, also on behalf of the

9   underwriter defendants.

10          THE COURT:  Ms. Brewer?

11          MS. BREWER:  Good afternoon, Your Honor.  This is

12   Linda Brewer from Quinn Emanuel on behalf of the SoftBank

13   defendants.

14          THE COURT:  Ms. Haggans?

15          MS. HAGGANS:  Good afternoon.  Valerie Haggans of

16   Goodwin Procter on behalf of the True Ventures defendants.

17          THE COURT:  Okay.  And Mr. Shapiro?

18          MR. SHAPIRO:  Good afternoon, Your Honor.  Jonathan

19   Shapiro, Goodwin, on behalf of the True defendants.

20          THE COURT:  Good afternoon, everyone, and sorry for

21   the -- I did my best with the last names.  It's okay but, you

22   know, not perfect, but I apologize for that.  But thanks,

23   everyone, for joining today.

24          Really, the focus that I wanted to discuss were there

25   were two pending issues that have been raised by the DCVC

1     defendants.  And, you know, so it's really -- primarily, I

2     think I need to hear from them and from the plaintiffs on those

3     issues or I want to talk through those issues with them, but

4     I -- you know, so if others of you are not that interested,

5     you're free -- I'm not going to keep you here, but I suspect

6     others may be interested in these issues, or at least one, so I

7     didn't want to specifically say that -- who -- you know, that

8     you didn't need to be here at the outset, and certainly if

9     there are other issues that we need to address, we can.

10           But I felt like it would be easier just to get

11     certainly the plaintiffs and DCVC defendants on this Zoom to

12     talk through the issues as opposed to trying to resolve them in

13     some other way.

14           So let's start with the motion that has been filed,

15     and I -- you know, that we're still sort of -- it's noted for a

16     period down the road, and presumably it's been filed in the

17     normal notice motion schedule, which is to seek a -- the

18     setting of a schedule for class certification with respect to

19     the DCVC defendants.

20           And my question -- I mean, the real question that I

21     have for you, and I think that's -- I guess it's directed to

22     Mr. Kahn is, you know, why is not -- why is the answer not for

23     your client to -- clients to just file a motion to decertify if

24     you think that that is appropriate?

25           MR. KAHN:  Sure.  Thank you, Your Honor.  I should

UNITED STATES DISTRICT COURT

1  clarify.  It's not just DCVC that filed a motion but the other

2  VC defendants as well.

3          THE COURT:  Fair enough.

4          MR. KAHN:  But I'm happy to take that.

5          Your Honor, a motion to decertify I guess would just

6  not be the proper motion here because no class has been

7  certified against our clients.  We -- just objectively that's

8  just true, because we were not part of the case at the time a

9  class was certified.  The order didn't mention our clients.

10  The notice to the class didn't mention our clients.  It's just

11  an objective fact that no motion has been certified.

12          Go ahead.  I can see Your Honor wants to --

13          THE COURT:  Well, I mean, the problem is that the

14  language of Rule 23 says that you certify the action that's a

15  class action.  It doesn't say you certify -- you know, unless

16  you're doing something sort -- you know, a claim certifying or

17  something like that, but it says that you certify the action.

18  And this action has been certified, and it also says that that

19  can be modified or altered at any time until final judgment.

20          And, you know, it seems to me that the combination of

21  those, so this action has been certified, but, you know, you're

22  entitled to file a motion to decertify, you know, in whole or

23  in part, if you think that's inappropriate.

24          I don't -- you know, and I don't think -- I think

25  that's more than sufficient to address any due process concerns

9

1    that exist, you know, that you have a right to be heard on the

2    issues and it's just you're heard through the motion of a --

3    you're heard in the context of a motion to decertify, which

4    honestly, you know, gives you two briefs rather than one, so

5    maybe that's better for you.

6            MR. KAHN:  Right, Your Honor, but, you know, as we

7    talked about in our brief with a Sixth Circuit case, there's a

8    very similar kind of scenario where a class had been certified

9    prior to the defendants' entry into the case and the judge

10   said, no, well, the class has been certified as well against

11   you.  And that went up to the Sixth Circuit on mandamus and the

12   Sixth said, no, that's not the case.  It was a due process

13   right to actually have the plaintiffs bring that class cert

14   motion against those defendants.

15           THE COURT:  I mean, I didn't see anything in there

16   about -- I mean, it seemed to me at least the way it was

17   described that there was not -- their circumstance was

18   described that they weren't given the opportunity to file a

19   motion to decertify.

20           MR. KAHN:  You know, the way I read it was it was just

21   right away that the class was certified against them without

22   the opportunity first for plaintiffs to make their case about

23   why a class was appropriate against those --

24           THE COURT:  You know, you'll have an opportunity to

25   make your case through a motion for decertification.  I mean, I

1   just don't -- you know, and one issue that will be -- certainly

2   be briefed is the standard that -- you know, what standard,

3   where is the burden.  But, you know, I -- on a quick, you know,

4   just my own quick research, there is at least authority

5   suggesting that the burden on that motion remains on the

6   plaintiffs as it would on the motion to certify, you know, and

7   plaintiffs can point me in the other direction if there's other

8   authority going the other way, but -- you know, so it's not

9   even clear to me that there's any question of a differential

10  burden or anything that exists.  Certainly that wasn't

11  identified in the pleading.

12          MR. KAHN:  Right.  Your Honor, I mean, again, we just

13  weren't even parties at the time that this decision was made by

14  the other defendants in this case to not oppose it.  We weren't

15  involved in this proceeding, so to have a class be certified

16  against us when we weren't even a party, didn't have an

17  opportunity to participate just, frankly, as a matter of common

18  sense seems like a class can't be certified against parties who

19  were not parties to the proceeding at the time a class was

20  certified and that plaintiffs need to file that motion.

21          THE COURT:  I mean, again, it's -- you know, it's the

22  problem if you certify claims or actions.  I mean, you know,

23  you -- the action is certified as a class action, and that's

24  the way it's contemplated, and they contemplate the possibility

25  of changes.  So, I mean, I think -- you know, I wanted to have

1    this discussion but it seems to me that, you know, I'm inclined

2    to deny the motion that you've filed without prejudice to your

3    filing of a motion to decertify.  You know, and I haven't heard

4    a good reason -- I think that entirely preserves your right to

5    be heard on the issue, you know, and that that provides a --

6    that provides the best way, the best means for this issue to be

7    resolved.

8              MR. KAHN:  And just so I understand from Your Honor,

9    that we understand Your Honor to be ruling that that class has

10   been certified against our clients?

11             THE COURT:  There is a class -- there is a class

12   certification in place now, and you have the right, to the

13   extent there's any ambiguity, if you think it's ambiguous as to

14   its scope, you can -- I mean, you know, there's -- you can seek

15   a motion to modify the scope of -- file a motion to clarify the

16   scope of the class, to modify the scope of the class, or to

17   decertify the class to the extent that it's -- on its current

18   terms it exists as a class certified against your clients.

19             MR. KAHN:  Okay, Your Honor.  Understood.

20             THE COURT:  And that's -- these are -- I mean,

21   that's -- I think a motion that you would bring would be the

22   best and most economical way to present all of these issues and

23   to get this figured out.  So that's -- so I think that's what

24   we -- that's the way I think it makes sense to proceed, so I

25   will do that.

1    So I'm granting -- I'm denying the motion orally, as I

2 say, without prejudice to the filing of a motion to decertify

3 or to modify the existing class certification order.  There's

4 no need for the plaintiffs, obviously, to file a response to

5 the motion that was filed.

6    Then the second issue is this issue of the time frame,

7 of whether there -- the time for discovery should be enlarged

8 to allow the deposition of Baron Investments.

9    And I had a chance to review the parties' pleadings.

10 I mean, let me -- and, again, I'll address -- I think this

11 is -- this one is specifically just the DCVC defendants.  Is

12 that right, Mr. Kahn?

13    MR. KAHN:  That's right.  That's right.

14    THE COURT:  Okay.  So let me address, you know, my

15 concern -- let me explain my concern, and you can see if you

16 can address it.

17    Which is, you know, whether intentional or not, it

18 does appear that the effect of the back-and-forth and then the

19 postponement of this motion and the filing of the motion now

20 would be that the DCVC defendants are able to get kind of what

21 they want in terms of discovery from Baron but that the

22 plaintiffs are unable to do so.  You know, that they're -- they

23 did file a subpoena and -- for deposition testimony and for

24 documents, and that, you know, in part, perhaps because there

25 hadn't been any extension of the deadline we're talking about

1   now and whatnot, you know, I know they didn't move to compel

2   where you did; but either way, the fact deadline passed, no

3   party had sought to extend it, and so, you know, now they're in

4   a situation of not getting that information where your client

5   would be able to do so.

6        And so my -- my impulse is to deny the request without

7   prejudice again to, if the party -- if the plaintiffs and you

8   can agree on a method by which all of the parties that have an

9   interest in getting this discovery from Mr. -- from Baron, not

10  Mr. Baron, sorry -- are able to do so, presumably they can do

11  so when they agree on doing so, but that as it stands, you

12  know, I do think it does appear that there's some prejudice to

13  plaintiffs of allowing an extension just for the purposes that

14  have been identified.

15       So, you know, why shouldn't I think of it that way?

16       MR. KAHN:  Sure.  And I think the simple answer is

17  that we did file a motion to compel and plaintiffs did not, and

18  that's the mechanism by which parties, if they wish to not just

19  give up on their discovery request to a party or nonparty,

20  that, you know --

21       THE COURT:  Right, but then you allowed all the

22  deadlines here to pass and waited more than a month before

23  seeking to extend the fact discovery deadline, right?

24       MR. KAHN:  Well, that's -- we didn't think it was

25  necessary, Your Honor, frankly.  We only did it because

1    plaintiffs put up this -- you know, we timely served our

2    discovery.  We timely moved to compel.  In the face of that

3    motion to compel to give us documents by a date certain and a

4    deposition by a date certain, finally Baron relented, said,

5    okay, okay, in response to our motion without the need to go to

6    court.

7         And despite that, plaintiffs said no, we're going

8    to -- we don't think you can do that, and if you go forward

9    with this deposition, we're going to potentially move to

10   exclude it as untimely.  And we think that's, frankly, not

11   supported because we did everything that we were supposed to do

12   by timely making our motion to compel.  And it doesn't make

13   sense to us that we can just resolve that motion without, you

14   know, going to the Court to weigh in when Baron has now, in the

15   face of our motion, decided, okay, I'll comply with your

16   discovery requests.  And then --

17        THE COURT:  Right, but you are moving in a different

18   court.  You're involving a third party.  You know, I -- the

19   case schedule here is my case schedule, and you have to get

20   modifications -- you know, even a stipulation from the parties

21   wouldn't necessarily have been enough because I -- you know,

22   the case schedule is mine.  And so even if the plaintiffs were

23   totally in agreement, that's no -- there was no guarantee you'd

24   be given this extension of the deadline.

25        And, you know, I think that's why, you know, the

1   expectation is unless you -- is to come in advance of the

2   expiration of deadlines to have them modified.

3           MR. KAHN:  Your Honor, you know, and I think in the

4   context of discovery, that's not the right procedure, and I

5   think plaintiffs themselves have actually recognized that

6   because in this case, after the fact discovery cutoff occurred,

7   plaintiffs filed discovery dispute letters according to the

8   deadline after the close of fact discovery with the magistrate

9   judge here, seeking to compel discovery that they'd served

10  prior to the discovery cutoff.  And of course, they're trying

11  to actually get that discovery, right?  That's the whole point

12  of filing a motion to compel after the close of fact discovery.

13          Plaintiffs never argued there that they needed to come

14  to Your Honor to extend the schedule.  They just said, look,

15  I'm filing my motion of my discovery dispute motion in

16  accordance with the rules, and that's exactly what we did.

17          So just like plaintiffs were trying to get discovery

18  through Dockets 509, 511 on the docket, that's what we're

19  trying to do.  We had to go to a separate court because that's

20  what the federal rules provide with a third-party subpoena.  We

21  actually have to go to the SDNY where Baron's located.

22          But otherwise, it's no different than what plaintiffs

23  did here by filing the discovery motion after the close of fact

24  discovery to compel discovery that they served prior to that.

25  So we shouldn't be prejudiced when plaintiffs are doing that

16

1    exact same thing.  We shouldn't be prejudiced just because we

2    had to file in the SDNY pursuant to the federal rules.

3              THE COURT:  The fact of the matter, as I recall, at

4    most, the default rules I think generally provide that

5    discovery disputes do need to be presented in time for their

6    resolution prior to the close of fact discovery.  Now, that may

7    not have happened and you may not have raised an objection, but

8    otherwise that's the default rule and that, you know, the fact

9    of the matter is that I -- you know, the fact discovery

10   deadline is mine.  There are circumstances where I've

11   authorized the magistrate judges, you know, to make certain

12   modifications in connection with disputes that are properly

13   presented.

14             But that is a deadline, you know, that there is

15   just -- some matters of discovery are true discovery disputes,

16   but these are case management orders that are set by my

17   deadlines and, you know, that passed without this happening.

18   And so -- and again, I do have this concern about this

19   prejudice to the plaintiffs under these circumstances.  I --

20             MR. KAHN:  Your Honor -- sorry.

21             THE COURT:  No, go ahead.

22             MR. KAHN:  No, I mean, and Your Honor, that's

23   something that I can't cure, that prejudice, because they have

24   to go to Baron and ask Baron if Baron would complete that

25   discovery and, you know, plaintiffs chose not to file a motion

1    to compel.  We were talking with plaintiffs before the fact

2    discovery cutoff about how we were going to have to file a

3    motion to compel, and they said, hey, we're in the same boat.

4    We're also not getting our discovery from Baron.  We went

5    through with it.  Plaintiffs did not.  And, look, they're going

6    to have to talk with Baron about that, but plaintiffs did not

7    do anything to try and put that motion to compel over the head

8    of Baron, unlike us.

9         So we -- you know, that prejudice is of their own

10   making, Your Honor, by not actually seeking to move to compel.

11   We did do that.  We did everything we were supposed to do, and

12   we should not be prejudiced because plaintiffs chose not to do

13   the extra work that we did by filing our motion in the SDNY,

14   Your Honor.

15        THE COURT:  Well, I mean, unless -- the fact of the

16   matter is they relied on the fact that you had filed this

17   motion but you hadn't actually sought any authority to continue

18   taking this discovery after the close of fact discovery.

19   Right?

20        MR. KAHN:  I mean, the authority is just that -- the

21   motion to compel deadline under the local rules, Your Honor, is

22   to file seven days after the close of fact discovery, so we

23   complied with the rules about when we were supposed to file our

24   discovery motion.

25        So we did what we were supposed to do to try to get

1    the discovery.

2          And it's -- the fact of the matter is that Baron was

3    dragging their feet for plaintiffs.  They were dragging their

4    feet for us.  We timely filed a motion to compel under the

5    rules, and we should be able to get the discovery that's

6    subject to that motion, Your Honor.

7          THE COURT:  Okay.  Is there anything plaintiffs want

8    to offer on this?

9          MR. WILLIAMS:  Sure, Your Honor.  Shawn Williams,

10   Robbins Geller Rudman and Dowd.

11         I think you're exactly right, and you've probably

12   seen -- just by way of background, you've probably seen a lot

13   of the action in the case.  I mean, we have had discovery

14   disputes almost every week, and sometimes multiple times a

15   week, and Judge van Keulen has done a great job of trying to

16   manage the case for us from a discovery perspective.

17         With respect to this deposition, as you indicated, we

18   actually attempted to work with DCVC to get this deposition

19   taken either within the time frame of discovery or get a

20   stipulation before Your Honor to modify the discovery schedule

21   so that the deposition could occur outside of the last day of

22   discovery.  And they were unable to -- they did not want to

23   reach an agreement with us, or they couldn't reach an agreement

24   with us.

25         We always understood that in order to take discovery

1   after the close of discovery, we needed to get permission from

2   the Court.  In fact, defendants also understood that because we

3   submitted a stipulation to Your Honor for that very purpose for

4   two other depositions that were not -- well, that couldn't be

5   scheduled within the discovery deadline because the

6   defendant -- it was inconvenient for defendants.

7           So we entered into a stipulation to take the

8   deposition of Mr. Ocko, entered into a stipulation to take the

9   deposition of Mr. Sharma outside the discovery deadline.  We

10  got an order from the Court permitting us to do so, and that

11  was consistent with what we understood to be the rules.

12          In this specific instance, I think we could probably

13  go back and forth about the conversations about this specific

14  discovery, but this is -- I mean, DCVC has known about Baron

15  and Baron's role in this litigation for years, and Baron was a

16  part of the early investment in this company.  They knew that

17  Baron was the investment manager for West Palm when -- at least

18  a year ago.  They took the deposition of West Palm and

19  understood and questioned them about Baron's role in the case.

20          So this is not a question of something happened late

21  in the day and the only mechanism for them to get this

22  discovery was to file a motion seven days after the deadline in

23  New York to get it.  That's just not what happened here.

24          So that's sort of the circumstance of it.  However, we

25  understood the rules.  We know that the deadlines are yours.

1  Rule 16 requires the Court to actually extend the deadline for

2  discovery to be taken, and we informed them of that, that if

3  they were going to try to take this deposition they could go

4  ahead, but we were going to move to exclude it.

5       Last point:  They served the subpoena just a week and

6  a half ago.  Even if they believed that the motion in New York

7  was sufficient, and I don't think it is, there is nothing that

8  would have permitted them to serve a subpoena outside of --

9  outside of the discovery period without the Court's

10 authorization.

11      So I think that, you know, it appears that the Court

12 might be inclined to deny the motion.  I think that we would

13 consider continuing to speak with the defendants to get an

14 agreement and maybe a stipulation before Your Honor.  We've

15 tried that multiple times.  But at this point, I don't know if

16 we'll be able to reach an agreement.

17      I heard the argument that we, plaintiffs, would have

18 to go work with Baron to get Baron to agree to produce the

19 documents that we've asked for and testify consistent with the

20 notice that we served.  We've tried that, to no avail.

21      So at this point, we don't believe that this

22 deposition is appropriate.  I don't know that we can reach an

23 agreement.  It has appeared that Baron has been cooperating

24 more friendly with DCVC than us.  I -- we just haven't made any

25 headway with them.

1          So just to be clear, we have been willing to reach a

2    stipulation, get it before the Court, and see if the Court was

3    inclined to execute it.  And that has really not -- it really

4    hasn't -- it's been fruitless.

5          I can answer any other questions if Your Honor has

6    them.

7          THE COURT:  No.  Let me give Mr. Kahn an opportunity

8    to respond.

9          MR. KAHN:  Your Honor, I mean, first, it's just not

10   the case that we just served the subpoena for the deposition.

11   We served a subpoena in December of 2024.  So that's just not

12   the case.  I mean, we --

13         THE COURT:  Did you do an updated subpoena?

14         MR. KAHN:  Yes.  We updated it just to accommodate the

15   new date, but the subpoena was originally issued, you know, way

16   back when, just a ministerial change.

17         THE COURT:  Right.  And I -- but also there was

18   some -- I mean, there was this whole thing where it was set for

19   December 18th and -- or I guess there was -- the same day that

20   plaintiffs served their subpoena, their deposition subpoena and

21   document subpoena on Baron was -- it was -- the planned date

22   was taken off calendar without explanation?  What was the

23   reason for that?

24         MR. KAHN:  No, Your Honor.  This is normal course -- I

25   mean, you know, we serve a subpoena for compliance on a certain

1    date but then just negotiated, you know, dates with the third

2    party when they could actually complete it.  I mean, you know,

3    we all have to put a date in in a subpoena when we serve it,

4    and then it's normal course, of course, with third parties or a

5    deposition notice to then actually work with the witness to get

6    a date.

7         You know, we didn't think that original December date

8    was actually going to stick.  It's just we had to throw a date

9    in there --

10        THE COURT:  Yeah, I thought it was actually -- this

11   was a later point where, now that I'm thinking about it, I

12   thought that there was an early January date that was taken off

13   calendar on December 18th, around the date that plaintiffs

14   served their subpoena for a deposition and fact testimony.  And

15   that had been a date that had been agreed upon, as I

16   understand.

17        MR. KAHN:  I don't recall that, whether it was agreed

18   upon, but the issue is just Baron was not -- hadn't completed

19   its document production.  It started doing document productions

20   but it wasn't completed yet, and we didn't want to take the

21   deposition before we had all the documents, so we just had to

22   kick out the deposition until we got the documents.  And,

23   again, it took a long time.

24        And going back, Your Honor, I don't know what you

25   found most compelling, if anything, with Mr. Williams'

1    argument, but he talks a little bit about a stipulation.  We,

2    of course, were willing to stipulate, but the problem is that

3    plaintiffs wanted Baron to be part of the stipulation, and we

4    obviously don't control Baron.  And they want to try --

5           THE COURT:  I mean, their point is, you know, at this

6    point it does seem like your client is benefitting from some

7    degree of cooperation with Baron that is not being extended in

8    a similar degree to plaintiffs.  And that -- you know, that --

9    under these circumstances, that sort of is part of the concern

10   about the plaintiffs not having the same access to evidence,

11   this particular witness and their evidence that you do.

12           MR. KAHN:  Well, I mean, plaintiffs, of course, have

13   the same documents that DCVC got.  We turn over the documents

14   that we get from Baron.  And --

15           THE COURT:  Right, but presumably you're not asking

16   about things that -- you're not asking for things that you

17   think are more helpful to plaintiffs than to you.

18           MR. KAHN:  I mean, I believe that plaintiffs for the

19   most part are asking for the exact same things that we asked

20   for, you know, in our subpoena.  They basically just say, we

21   want what DCVC's getting.  And we, of course, have tried to

22   work with the plaintiffs to come up with a mutually agreeable

23   deposition date so they, of course, can go there and they can

24   ask their questions.

25           I mean, in terms of cooperation, we're the ones that

1    filed the motion.  We have a motion to compel.  Plaintiffs

2    don't.  So, I mean, we actually went through with motion

3    practice where they have a threat of a court order hanging over

4    their head, which we can still pursue in SDNY, of course.  They

5    said they don't want to go through that motion practice and

6    bother the Court with it, but it's not really cooperation when

7    we actually have a motion hanging over their head.  It's just

8    the practical realities of not wanting to go to court over it

9    when we clearly are in the right.

10          We have a normal subpoena, and we just need date

11    certain, and that's what we went to the court for, Your Honor.

12    Plaintiffs did not, and that's why they're not getting

13    cooperation, because they have no legal mechanism to get Baron

14    to agree to anything, whereas we do.

15          MR. WILLIAMS:  I'll just add, Your Honor -- sorry --

16    that they did not seek the identically same documents.  If that

17    were the case, I think this would be a bit more simplified.

18          And with respect to the deposition, we served a

19    30(b)(6) deposition notice that has different categories of

20    information that we'd like testimony on, so it's not the same

21    exact discovery.

22          THE COURT:  Okay.  Thank you.

23          I mean, I think obviously between the pleadings -- and

24    I had a chance to review all the pleadings -- and the evidence

25    supported therein and the argument now, I think I have more

1    than enough to decide the administrative motion, which is

2    getting a lot more attention than most of our administrative

3    motions, so -- or motions to enlarge time.

4          I am going to deny the motion that has been filed to

5    enlarge this deadline as both untimely and because there is

6    some risk to -- of prejudice to the plaintiffs of extending

7    that deadline.

8          So I'm going to deny the motion now.  You know, that

9    does not prevent the parties from seeing if they can reach some

10    agreement, and it may require working with the third party

11    themselves to get their commitments about, you know, the

12    possibility of this -- this witness and this evidence coming in

13    notwithstanding.

14          And if the parties reach agreement on that, I'll

15    consider that.  But I do think that absent that kind of

16    agreement, the timeliness and the prejudice concerns are enough

17    to decline to modify the case scheduling order and the fact

18    discovery deadline with respect to this matter.

19          So that will be -- that will be my ruling on the

20    matter.  I will deliver it orally so that the parties have it

21    and they can move forward, and I will plan to do a separate

22    written order.

23          MR. KAHN:  Okay.  Thank you, Your Honor.

24          MR. WILLIAMS:  Thank you, Your Honor.

25          THE COURT:  Two matters.  Is there anything else -- I

1   don't want to open the floodgates right now.  I'm sure there's

2   a million things that could -- is there anything incredibly

3   pressing that goes to the core of how we're going to manage

4   this case that we need to address right now?

5          MR. WILLIAMS:  Not from the plaintiffs, Your Honor.

6          THE COURT:  Okay.  I'll take everyone else's silence

7   as agreement with that position.

8          So, and I do -- if I recall, I do think we have

9   something -- we have a sort of further status conference set

10  for the future to sort of see where things are going, so I

11  think that's the appropriate time to do that.

12         But thank you all for jumping on Zoom today, and have

13  a good rest of the day.

14         MR. WILLIAMS:  Thank you, Your Honor.

15         MULTIPLE ATTORNEYS:  Thank you, Your Honor.

16         THE COURTROOM DEPUTY:  Thank you.  Court is concluded.

17         (Proceedings concluded at 2:28 p.m.)

18

19

20

21

22

23

24

25

27

<u>**C E R T I F I C A T E**</u>

  I, JENNIFER PANCRATZ, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter.

  I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

  DATED this 7th day of March, 2025.


<u>s/Jennifer Pancratz</u>
Jennifer Pancratz, RMR, CRR, CRC

**This Message Is From an External Sender**
This message came from outside your organization.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### California Northern District

## Notice of Electronic Filing

The following transaction was entered on 3/6/2025 at 2:44 PM PST and filed on 3/6/2025

| | |
|---|---|
| **Case Name:** | Wang v. Zymergen Inc. et al |
| **Case Number:** | 5:21-cv-06028-PCP |
| **Filer:** | |
| **Document Number:** | 536(No document attached) |

**Docket Text:**
**Minute Entry for proceedings held before Judge P. Casey Pitts: Status Conference held on 3/6/2025 via Zoom webinar re [528] Motion to Set Briefing Schedule and [529] Motion for Extension of Time to Complete Discovery. Argument of counsel heard. The Court denies [528] Motion to Set Briefing Schedule without prejudice to defendants' right to file a separate motion to decertify class. The Court denies [529] Motion for Extension of Time to Complete Discovery. No written orders to issue.**

**Plaintiff Attorney: Shawn Williams, Dan Pfefferbaum, Patton Johnson, Kristin Moody. Defendant Attorney: Michael Kahn, Alexander Setzepfandt, Linda Brewer, Robert Allen, Jonathan Shapiro, Valerie Haggans, Peter Kolovos, Kevin Muck, Michael Kichline, Charlene Shimada, Kevin Papay, Michael Komorowski.**

**Total Time in Court: 29 min.**
**Court Reporter: Jennifer Pancratz.**
***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (nmc, COURT STAFF) (Date Filed: 3/6/2025)**

**5:21-cv-06028-PCP Notice has been electronically mailed to:**

**Adam Marc Apton     aapton@zlk.com, Files@zlk.com**